# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM LEE (TOMMY) WHITED, ) | |
| ) | |
|     Plaintiff/Counter-Defendant, ) | |
| ) | |
| v. ) | Case No. 3:17-cv-01341 |
| ) | Judge Aleta A. Trauger |
| WESTROCK SERVICES, INC., ) | |
| ) | |
|     Defendant/Counter-Plaintiff. ) | |

## MEMORANDUM AND ORDER

Pending before the court is a Motion to Dismiss Counterclaim (Docket No. 17) filed by the plaintiff/counter-defendant, William Lee (Tommy) Whited, to which the defendant/counter-plaintiff, WestRock Services, Inc. ("WestRock"), has filed a Response (Docket No. 19), and Whited has filed a Reply (Docket No. 22). For the reasons discussed herein, the motion will be granted in part.

## BACKGROUND[1]

Tommy Whited was employed by WestRock for 46 years, most recently serving as General Manager of WestRock's Gallatin, Tennessee facility. As General Manager, Whited was the highest ranking member of local management at the facility, where his responsibilities included oversight of operations, employee safety and relations, and business expansion. Included within these responsibilities was enforcement of WestRock's various policies and procedures outlined in the company's Employee Handbook and Code of Conduct. On August 8, 2016, WestRock received an anonymous complaint via its employee hotline, alleging that Whited had created a hostile work environment and that employees were leaving the company as

---

[1] The facts are viewed in the light most favorable to the counter-plaintiff.

1

a result. WestRock investigated the complaint by interviewing employees, who reported that Whited had engaged in various forms of inappropriate behavior, including horseplay and derogatory language toward employees. This conduct allegedly included physically hitting and kicking subordinate employees. At least one of those employees resigned as a result, and at least one[2] filed suit against WestRock in this court[3] for discrimination under the Tennessee Human Rights Act, Tennessee Code Annotated Section 4-21-101 *et seq.* ("THRA"), assault and battery under Tennessee state common law, and overtime wage violations under the Fair Labor Standards Act, 29 U.S.C. § 203 *et seq*. On August 26, 2016, WestRock interviewed Whited as part of its investigation. In the interview, Whited admitted to violations of WestRock's Code of Conduct. He was terminated on August 30, 2016.

On August 28, 2017, Whited filed suit against WestRock in Tennessee state court. (Docket No. 1.) WestRock removed the case to this court, and, on January 19, 2018, Whited filed an Amended Complaint, setting forth state and federal statutory claims for age discrimination. (Docket No. 15.) On January 29, 2018, WestRock filed an Answer and Counterclaim against Whited, denying his charges of age discrimination and bringing state common law claims against him for breach of the duty of good faith and fair dealing and breach of the duty of loyalty. (Docket No. 16.)

## **LEGAL STANDARD**

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as

---

[2] It is unclear from the pleadings whether the employee who resigned is the same employee who filed suit against WestRock in this court.

[3] That case, which was pending before another judge of this court, closed on May 30, 2018 pursuant to a Joint Stipulation of Dismissal following mediation. *Kulakowski v. WestRock Services, Inc.*, No. 3:16-cv-2510, at Docket No. 50.

true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

## **ANALYSIS**

Whited contends that WestRock's counterclaims are barred under the THRA. Whited's argument is that, because he brings a claim in his Amended Complaint under the THRA, WestRock's counterclaims are governed by the THRA's constraints and are specifically barred

by Tennessee Code Annotated Section 4-21-301(b), which states as follows: "No individual employee or agent of an employer shall be liable for any violation of part 4 of this chapter that any employer shall be found to have committed." Tenn. Code Ann. § 4-21-301(b). Part 4 of the THRA "deals exclusively with employment-related discriminatory practices." *Bowles v. Heath Consultants, Inc.*, No. 2:16-cv-02982-STA-cgc, 2017 WL 1026017, at *4 (W.D. Tenn. Mar. 16, 2017). "Discriminatory practices" are defined in part 4 as "any direct or indirect act or practice of exclusion, distinction, restriction, segregation, limitation, refusal, denial, or any other act or practice of differentiation or preference in the treatment of a person or persons because of race, creed, color, religion, sex, age or national origin." Tenn. Code Ann. § 4-21-102(4). The crux of Whited's argument is that WestRock improperly seeks indemnification from him for its potential liability in the lawsuit brought against it by the WestRock employee who resigned based on Whited's alleged behavior. Such indemnification, Whited argues, is barred by Section 4-21-301(b)'s abrogation of supervisor liability in employment-discrimination suits.

Whited's reliance on Section 4-21-301(b) is misplaced. WestRock does not bring its counterclaims under the THRA, nor does it allege that Whited is liable for any discriminatory practices as defined under the THRA. "In determining the gravamen, or real purpose of an action, the court must look to the basis for which damages are sought. Another way of stating this principle is '[t]he limitation is not determined by the form of the action but by its object.'" *Keller v. Colgems-EMI Music, Inc.*, 924 S.W.2d 357, 359 (Tenn. Ct. App. 1996) (quoting *Bodne v. Austin*, 156 Tenn. 353 (1298) (internal citations omitted). The specific behavior that gives rise to WestRock's counterclaims is not facially discriminatory: "By engaging in inappropriate workplace behavior that includes hitting and kicking employees and verbally demeaning employees, Whited did not act in the best interests of [WestRock]." (Docket No. 16 at 8.)

4

Furthermore, WestRock does not seek indemnification for the claims brought against it pursuant to the THRA. "To the contrary, [WestRock's counterclaims] are based on the fact that [WestRock] was subject to a lawsuit for assault and battery as a result of Whited's actions." (Docket No. 19 at 3.) Under Whited's proposed approach, the THRA would protect employees against employer claims that are not brought under the statute and are not based on discriminatory conduct. Whited cites no precedent or legislative history suggesting that the THRA was meant to operate in this fashion. The court thus finds that the THRA does not shield Whited from liability for WestRock's counterclaims.

Whited also argues that WestRock fails to state a claim for breach of the duty of good faith and fair dealing because "it is not a stand-alone claim, but requires an underlying breach of contract claim." (Docket No. 7 at 6.) Indeed, under Tennessee law, "[t]he implied obligation of good faith and fair dealing does not . . . create new contractual rights or obligations." *Goot v. Metro Gov't of Nashville & Davidson Cty*., No. M2003–02013, 2005 WL 3031638, at *7 (Tenn. Ct. App. Nov. 9, 2005); s*ee also Dick Broad. Co., Inc.. v. Oak Ridge FM, Inc*., 395 S.W.3d 653, 666 (Tenn. Ct. App. Nov. 9, 2005) (holding that the duty of good faith "'does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectation of the parties.'") (quoting *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 687 (Tenn. 1996)). "The determination of what is required by the duty of good faith in a given case turns on an interpretation of the contract at issue. In construing contracts, courts look to the language of the instrument and to the intention of the parties, and impose a construction which is fair and reasonable." *Lamar Advert. Co. v. By-Pass Partners*, 313 S.W.3d 779, 791 (Tenn. Ct. App. 2009) (internal citations omitted). "[W]hile the implied covenant of good faith and fair dealing does not create new contractual rights or obligations, it protects the parties' reasonable

expectations as well as their right to receive the benefits of their agreement." *Dick Broad. Co., Inc.*, 395 S.W.3d at 666.

WestRock does not tie its claim to a specific provision of its employment agreement with Whited. It is unclear from WestRock's counterclaim whether, for example, Whited's employment agreement with WestRock mandated compliance with WestRock's Code of Conduct. But WestRock explicitly pleads that it expected Whited to abide by its polices as General Manager of its facility, treat his subordinate employees with respect, and not intentionally take actions that would negatively impact the company, such as physically abusing employees. Moreover, WestRock pleads that these expectations were derived from the agreement it had with Whited. (See Docket No. 16 at 9 ("Implied in the employment relationship between Whited and [WestRock] was the expectation that Whited would act in the best interests of WestRock and not intentionally expose [WestRock] to potential legal liability.").) Courts have read a reasonableness standard of conduct into contracts that are silent with regard to performance. *See Dick Broad Co., Inc.*, 395 S.W.3d at 667. ("Tennessee courts have imposed a standard of reasonableness in the performance of an agreement when the circumstances have warranted such a construction."). In *Dick Broad Co.*, the court held that the duty of good faith and fair dealing applied to a silent consent clause of an assignment provision and that a party, thus, could act in bad faith when it arbitrarily withheld consent, despite no language in the contract mandating reasonableness. The same principle applies here. WestRock pleads that it had an employment agreement that required Whited to carry out certain duties as General Manager of the Gallatin facility. The duty of good faith and fair dealing required Whited to carry out those duties reasonably. Physically and verbally abusing his subordinates is a derogation of that duty. The court finds WestRock's expectations reasonable and therefore

protected by the duty of good faith and fair dealing. WestRock's claim will not be dismissed at this stage.

In his Reply, Whited states, for the first time, an alternate ground for dismissal of WestRock's claim for breach of the duty of loyalty. He argues that WestRock fails to state a claim for breach of the duty of loyalty because Whited's alleged conduct does not reach the high standard for satisfying such a claim under Tennessee law. Under Tennessee law, all employees owe their employers a duty of loyalty. During the employment relationship, an employee has a fiduciary duty of loyalty to the employer. *Ram Tool & Supply Co., Inc. v. HD Supply Constr. Supply Ltd.*, No. M2013-02264-COA-R3-CV, 2016 WL 4008718, at *5 (Tenn. Ct. App. July 21, 2016), *appeal denied* (Dec. 14, 2016) ("The employee must act solely for the benefit of the employer in matters within the scope of his employment. The employee must not engage in conduct that is adverse to the employer's interests.") (quoting *Knott's Wholesale Foods, Inc. v. Azbell*, No. 01A-01-9510-CH-00459, 1996 WL 697943, at *3 (Tenn. Ct. App. Dec. 6, 1996). Tennessee courts have applied the requirement of adversity in situations where an employee acted not just detrimentally to the employer, but in furtherance of the interests of another. For example, in *Ram Tool*, the court found a breach of the duty of loyalty where an employee recruited and solicited co-workers to leave and work for a competitor, at the behest of the competitor, and diverted business from his employer to the competitor on his last day of work at the employer. *Id*. at *6. Similarly, in *Knott's*, the court affirmed a finding of summary judgment against an employee who recruited customers of the employer before entering a business arrangement with a competitor of the employer. *Knott's Wholesale Foods, Inc*, 1996 WL 697943 at *4. As the Tennessee Court of Appeals has explained:

> We equate breaches of duty of loyalty with the acts of a traitor. Traditional examples of breaches of loyalty duties in the

> employment context include acts of an employee in direct competition with the financial, proprietary, or business interests of an employer, thereby placing the personal interests of the employee before those of the employer, the sale or distribution of employer's protected trade secrets, and a myriad of other destructive acts amounting to more than mere mistaken judgment or negligence.

*Booth v. Fred's Inc.*, No. W2002-01414-COA-R3-CV, 2003 WL 21998410, at *13 (Tenn. Ct. App. Aug. 19, 2003); *see also Vraney v. Med. Specialty Clinic, P.C.*, No. W2012-02144-COA-R3CV, 2013 WL 4806902, at *32 (Tenn. Ct. App. Sept. 9, 2013) (citing *Booth*).

While Whited's alleged actions are troubling, they are not traitorous. They are unquestionably detrimental to WestRock, but they are not adverse to WestRock's interests in the sense that Whited was not plotting with one of WestRock's competitors or seeking to undermine its competitive business position with his actions. Put another way, Whited's actions are not qualitatively comparable to the types of perfidious acts that Tennessee courts have found to breach duties of loyalty. That Whited allegedly violated company policy is insufficient to establish a breach of the duty of loyalty. *Booth*, 2003 WL at *16 ("Regardless, we find no case law to support defendant's base assertion that violation of established company policy necessarily constitutes a breach of duty of loyalty."). WestRock's claim for breach of the duty of loyalty will be dismissed.

Finally, Whited argues that he should not liable for punitive damages as a matter of law. He makes two arguments. First, he argues that punitive damages are not available under various federal and state statutes that he states are implicated by WestRock's counterclaims. Because WestRock does not bring any statutory claims, this argument is inapposite. Whited also argues that the conduct alleged is insufficient to state a claim for punitive damages. He relies on *Goff v. Elmo Greer and Sons Construction Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) for the proposition

that punitive damages are only appropriate in the most egregious cases. In *Goff*, the court reaffirmed the principle that punitive damages are appropriate when "clear and convincing evidence [supports] that the defendant acted intentionally, fraudulently, maliciously, or recklessly." *Id.* (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992). "A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." *Hodges*, 833 S.W.2d at 901. WestRock pleads that Whited intentionally engaged in the conduct giving rise to its counterclaims. Whether clear and convincing evidence bears out WestRock's claim will be determined at later stages of this case. Punitive damages are not foreclosed at this stage as a matter of law.

## CONCLUSION

For the foregoing reasons, Whited's Motion to Dismiss Counterclaim (Docket No. 17) is hereby **GRANTED in part**. WestRock's claim for breach of the duty of loyalty is hereby dismissed.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge